**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Roy Martin and David Rudisel, individually and on behalf of all others similarly situated, </br></br>   Plaintiffs, </br></br> v. </br></br> Sparco, LLC, and AMOS Franchise Systems, Inc. d/b/a Advanced Maintenance, </br></br>   Defendants. | **COMPLAINT** </br> **Collective/Class Action** </br> (JURY TRIAL DEMANDED) </br></br> C.A. NO.: |

NOW COMES the Plaintiffs, by and through their undersigned counsel, and alleges as follows:

## INTRODUCTION

This case concerns the above-named Defendants and a business model of intentional misclassification of the Plaintiffs and all other members of the putative class as independent contractors rather than employees in an attempt to not only evade the overtime protections of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") but to also avoid paying certain employment taxes and business expenses. The Plaintiffs and all other members of the putative class performed mechanic services to fleet vehicles for the above-named Defendants on a continuous and around the clock basis. Rather than properly classify the Plaintiffs and all members of the putative class as "employees," Defendant AMOS Franchise Systems, Inc. ("AMOS"), a franchisor, created a scheme and business model for their franchisees that disguises those they employ as independent contractors.

1

Specifically, Defendant AMOS created a contract that the Plaintiffs and all other members of the putative class must sign to begin their employment that refers to them as a "Renter." The "Renter" designation in the contract refers to Defendants' policy that requires their mechanics to rent, for a nominal fee, the work vans and uniforms supplied by Defendants that bear their Advanced Maintenance logo. Defendant AMOS also created a compensation model for the Plaintiffs and all other members of the putative class that appears to pay them on a "Commission" basis when in fact they were paid an hourly rate. Additionally, Defendant AMOS created a policy whereby Plaintiffs and all other members of the putative class had to reimburse their franchisees for certain tools and parts necessary to complete their job assignments.

The above-mentioned reimbursement policies and Defendants' "Renter" and "Commission" terminology are merely attempts to mask the reality that Plaintiffs and all other members of the putative class are employees. As discussed in more detail below, Defendants exerted near total control over the Plaintiffs and members of the putative class whom performed all the duties and services offered by Defendants.

As a result of Defendants improperly classifying Plaintiffs Roy Martin and David Rudisel, and all members of the putative class as independent contractors, the Plaintiffs bring this Collective/Class action lawsuit against Defendants d/b/a Advanced Maintenance seeking to recover for Defendants' violations of the FLSA and the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to 110 ("SCPWA").

In addition to the Collective/Class claims, Plaintiff Roy Martin brings an individual separate claim seeking to recover for Defendants' violation of the SCPWA. Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Roy Martin ("Martin") is a resident of the State of South Carolina, County of Greenville.

2. Plaintiff David Rudisel ("Rudisel") is a resident of the State of South Carolina, County of Spartanburg.

3. Pursuant to 29 U.S.C. § 216(b), Plaintiffs have consented in writing to be a party to the FLSA claims asserted in this action, and Plaintiffs' signed consent forms are attached. (See Exhibits A & B - Plaintiffs' Consent to Sue Forms).

4. Defendant Sparco, LLC ("Sparco") is upon information and belief a limited liability company organized and existing under the laws of South Carolina and operating in Greenville and Spartanburg Counties in the upstate of South Carolina and doing business under the franchise name, Advanced Maintenance.

5. Sparco provides both scheduled and emergency road-side maintenance and repairs to commercial fleet vehicles 24 hours a day, 7 days a week.

6. AMOS Franchise Systems, Inc. ("AMOS") is the acting franchisor of Sparco and approximately thirteen (13) other franchise locations in six (6) states.

7. That, upon information and belief, AMOS is a corporation organized and existing under the laws of North Carolina with its principal office located at 2820 N. Kerr Avenue, Wilmington, North Carolina 28405.

8. At all times material to this action Sparco has regulated the employment of all persons employed by this company, acted directly and indirectly in this company's interest in relation to said employees, and is thus an employer of Plaintiffs within the meaning of 29 U.S.C. § 203(d) of the FLSA.

9. AMOS, either formally or as a matter of practice, maintained control over their franchisees, to include Sparco, by among other things, directly or indirectly controlling certain daily operations to include the hiring practices of the service technicians. Additionally, AMOS controls their franchisees by providing certain operations manuals detailing the company's proprietary business practices, marketing materials to include the Advance Maintenance website, and training in all aspects of the business operations[1].

10. Anyone looking for employment with Defendants can go directly to a website controlled by AMOS and complete an application for employment that will be directed to a franchisee in the desired area.

11. Upon information and belief, AMOS created, implemented, and profited from the pay practices that form the basis of this lawsuit.

12. Upon information and belief, AMOS created certain "Renter" employment contracts that their franchisees, to include Sparco, used to establish the working relationship between the franchisee owners and service technicians they employed.

13. By virtue of their control of their franchised locations, AMOS has assumed the status of joint employer of the Plaintiffs and similarly situated individuals. The imposition of joint employer status is justified by the level of control and the directing of decisions regarding day-to-day employment matters including the pay policies at issue here.

14. All the above-named Defendants are either an enterprise in their own right or part of a single enterprise under the FLSA because the entities perform related activities through unified operation and common control for a common business purpose.

---

[1] See, Advance Maintenance Franchise Brochure found at http://www.advancedmaintenance.com/pdf-docs/Franchisebrochure7-23-07.pdf

15. During the relevant time-period, Defendants employed individuals who handled, sold, or otherwise worked on goods or materials that have been moved in, or produced for, commerce.

16. The Plaintiffs are not exempt from the overtime protections of the FLSA pursuant to 29 U.S.C. § 213(b)(1), i.e., Motor Carrier Exemption, because they were not employed by a motor carrier as defined in 49 U.S.C. § 13102.

17. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

18. In addition to their FLSA collective action claims, Plaintiffs also assert class claims pursuant to Fed. R. Civ. P. 23 for a state law cause of action pursuant to the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.* ("SCPWA").

19. In addition to their Class/Collective claims, Plaintiff Martin brings a claim under the PWA in his individual capacity and not on behalf of the class.

20. This Court has supplemental jurisdiction over Plaintiffs' class state law claims and Plaintiff Martin's individual claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because a substantial part of the acts or omissions giving rise to these Plaintiffs' claims occurred within Greenville County, and Defendants are subject to personal jurisdiction in this district.

## **SUMMARY OF CLAIMS**

22. The crux of the FLSA and SCPWA is, *inter alia*: (i) that all employees are entitled to premium overtime compensation for all hours worked in excess of 40 hours a week; and (ii) that wages cannot be diverted from employees to offset the business expenses of the employer.

23. Contrary to these basic protections, Defendants improperly classified its service technicians, including Plaintiffs, as "independent contractors" despite Defendants' near total control over them. Consequently, Plaintiffs and the members of the Classes (defined below) were: (i) deprived of premium overtime compensation for all hours worked in excess of 40 per workweek; and (ii) forced to reimburse Defendant for its ordinary business expenses.

24. Plaintiffs bring this action as a collective action to recover unpaid wages pursuant to the FLSA's 29 U.S.C. § 216(b).

25. In particular, Plaintiffs bring this suit on behalf of the following similarly situated persons:

> All current and former individuals who have worked for Defendants in the capacity of a roadside service technician within the statutory period covered by this Complaint, and who elect to opt-in to this action pursuant to FLSA, 29 U.S.C. § 216(b) ("Collective Class").

26. In addition, Plaintiffs also bring this action as a state class action to recover unpaid wages pursuant to the SCPWA.

27. Defendants have willfully committed widespread violations of the FLSA and SCPWA by engaging in a pattern, practice, and policy of failing to pay employees overtime pay and making unlawful deductions from their employees' wages.

28. Specifically, Plaintiffs bring this suit on behalf of a class of similarly situated persons composed of:

> All current and former roadside service technicians who have worked for Defendants in the state of South Carolina during the statutory period covered by this Complaint ("SC Class").

29. Plaintiffs allege on behalf of the Collective Class and SC Class that Defendants violated Federal and South Carolina state laws by, *inter alia*:

(i) improperly denying them overtime wages for all hours worked in excess of forty (40) hours in a workweek;

(ii) improperly making deductions from employee wages; and

(iii) improperly denying to pay all wages that have become due and owed.

30. In addition to the Collective Class and SC Class claims, Plaintiff Roy Martin also brings an individual SCPWA claim against Defendants for their failure to pay his last earned paycheck.

## FACTUAL ALLEGATIONS

31. Plaintiffs were hired by the Defendants as mechanics ("Renters") who specialized in making repairs and performing preventative maintenance on commercial fleet vehicles.

32. Generally, Plaintiffs performed manual labor tasks involving repetitive operations with their hands, physical skill, and energy.

33. Prior to their hiring, both Plaintiffs had to submit an application for employment as well as pass a criminal background check.

34. Upon their hiring, Plaintiffs had to enter into a contract with Defendants that laid forth many of the details, covenants, restrictions, and expectations surrounding Plaintiffs' employment.

35. During the first several days of their employment, both Plaintiffs had to complete a training process instituted by Defendants whereby Plaintiffs had to learn certain protocols and procedures that were necessary to complete their daily tasks for Defendants.

36. At all times relevant, in performing their duties for Defendants, Plaintiffs were required to wear a uniform and drive a work van that were both supplied by Defendants and that both bore Defendants' Advanced Maintenance logo.

37. In addition to supplying Plaintiffs with their uniform and work van, Defendants also supplied Plaintiffs with various mechanical tools that were necessary to complete their daily tasks. Additionally, Defendants supplied Plaintiffs with a business credit card that was used to purchase any necessary tools and materials to complete their daily tasks as well as a cell phone so Defendants could keep in constant contact with Plaintiffs to alert them of their tasks and learn of their whereabouts.

38. The Plaintiffs worked for Defendants on a full time and continuing basis and did not sell or advertise their services to the general public or work as contractors for anyone other than the above-named Defendants.

39. In fact, Plaintiffs could not work for any other contractor during their employment with Defendants or sell or advertise their services to the general public because their "Renter" employment agreements with Defendants forbid such activity. After Defendant Sparco terminated Plaintiff Roy Martin, his supervisor sent him letter seeking to enforce the non-solicitation provisions outlined in his "Renter" employment agreement. (See Exhibit C – Defendant's letter to Plaintiff Martin).

40. As outlined in above-mentioned "Renter" employment agreement, Defendants make their mechanics an integral part of their business, i.e., the only business Defendants perform is the mechanical work performed by Plaintiffs and all those similarly situated.

41. Moreover, the following conduct demonstrates that Defendants acted as an employer with respect to Plaintiffs:

   a. Plaintiffs were required to report to their assigned job site at a set time;

   b. Plaintiffs were paid a non-negotiable hourly rate, like employees;

   c. Defendants set forth the required procedures to be followed and the order and manner in which Plaintiffs were to perform their work;

8

    d. Plaintiffs faced termination if they failed to perform their work in the manner required by Defendants and in fact Plaintiffs were terminated for failing to perform their working the manner required by Defendants;

    e. Plaintiffs were assigned a substantial number of hours of work per week;

    f. Plaintiffs constituted the workforce without which Defendants could not perform their services;

    g. Plaintiffs worked for Defendants for long periods of time as is common with employees.

42. With regard to Defendant Sparco, this Defendant hired/fired, issued pay, supervised, directed, disciplined, scheduled, and performed all other duties generally associated with that of an employer with regard to Plaintiffs. Specifically, this Defendant instructed Plaintiffs when, where, and how Plaintiffs were to perform their work. (See Exhibit D – Text Messages between Martin & Supervisor).

43. Despite Defendants controlling nearly every aspect of Plaintiffs' employment, Defendants classified the Plaintiffs, and all those similarly situated, as independent contractors rather than employees and issued them an IRS 1099 tax form.

44. In no way could Plaintiffs be classified as independent contractors; therefore, they are not subject to the FLSA's overtime requirements.

45. Nor could Plaintiffs be salaried exempt from the FLSA's overtime requirements because at no time did Plaintiffs ever perform any executive, administrative, or professional duties that would weigh in favor of an exempt salaried employee.

46. Further, the Department of Labor has definitively stated that manual laborers or other "blue collar" workers who perform work as a "mechanic" are never salaried exempt under the FLSA no matter how highly paid they may be[2].

47. Since Defendants were operating under the mistaken belief that their employees were independent contractors ("Renters") rather than employees, they failed to record or account for the number of hours Plaintiffs worked each workweek.

48. Since Defendants failed to record Plaintiffs' workweek hours, the allegations below serve as a recreation of Plaintiffs' working hours and support Plaintiffs' FLSA overtime claims.

49. Plaintiffs' work for Defendants was comprised primarily of either scheduled repairs or maintenance work to the vehicles (hereinafter "Scheduled Work") or emergency repairs whereby Plaintiffs would travel to the location of the broken-down vehicle to make a roadside repair.

50. All of the Plaintiffs' Scheduled Work took place between the hours of 8:00 am to 5:00 pm, Monday through Friday, at either Defendants' 716 E. Fairfield Road, Greenville, SC 29605 location (hereinafter "The Shop") or at the shop of the customer requesting the Scheduled Work.

51. As for the emergency repairs, the Defendants designated these types of repairs as either On-Shift Emergency Calls or Off-Shift Emergency Calls. The On-Shift Emergency Calls were performed by the Plaintiffs between the hours of 8:00 am to 5:00 pm, Monday through Friday.

---

[2] U.S. Department of Labor, Wage and Hour Division, Fact Sheet 17A: Exemption for Executive, Administrative, Professional, Computer & Outside Sales Employees Under the Fair Labor Standards Act (FLSA).
http://www.dol.gov/whd/regs/compliance/fairpay/fs17a_overview.htm

The Off-Shift Emergency Calls were performed by the Plaintiffs between the hours of 5:00 pm to 8:00 am, Monday through Friday, or at any time on Saturday or Sunday.

52. As part of their daily assignments, Defendants required Plaintiffs to report to The Shop at 8:00 a.m. each morning, Monday through Friday, to either begin their Scheduled Work or wait to be dispatched to On-Shift Emergency Calls. If Plaintiffs did not have any Scheduled Work to perform or were not working On-Shift Emergency Calls then they were required to wait at Defendants' Shop until they were dispatched to their On-Shift Emergency Calls.

53. After Plaintiffs completed the above-mentioned work from 8:00 am to 5:00 pm, Monday through Friday, they were then on-call to take Off-Shift Emergency Calls from 5:00 pm to 8:00 am, Monday through Friday or at any time during Saturday or Sunday.

54. For all Scheduled Work, Plaintiffs were paid an hourly rate of $29.75.

55. For all On-Shift Emergency Calls, Plaintiffs were paid an hourly rate of $40.00.

56. For all Off-Shift Emergency Calls, Plaintiffs were paid an hourly rate of $60.00.

57. The time Plaintiffs spent at The Shop between either working a Scheduled Job or working On-Shift Emergency Calls were hours worked pursuant to either 29 C.F.R. § 785.15, *On duty*, or 29 C.F.R. § 785.17, *On-call time*, because Plaintiffs had to remain at The Shop or so close thereto that they could not use their time effectively for their own purposes.

58. Since Plaintiffs' first principal activity of their employment began when they arrived at The Shop at 8:00 am, Monday through Friday, and their last principal activity was when they either completed their last Scheduled Job or one of their On-Shift Emergency Calls, all the hours spent traveling during this time frame were hours worked pursuant to 29 C.F.R. § 735.28, *Travel that all in a day's work*, and therefore cannot be exempted from compensable time under the Portal-to-Portal Act of 1947, 29 U.S.C. 251 *et seq*.

11

59. The time spent by Plaintiffs working Off-Shift Emergency Calls were hours worked within the meaning of 29 C.F.R. § 785.17, *On-call time*, because of the high volume of Off-Shift Emergency Calls, the urgency in which Plaintiffs had to report to their designated assignment, and their geographic limitations requiring them to remain close to the area they were servicing.

60. The on-duty time, Monday through Friday, 8:00 am to 5:00 pm, alone resulted in Plaintiffs working in excess of forty (40) hours during a seven (7) day period.

61. Even if the on-duty time, Monday through Friday, 8:00 am to 5:00 pm, was not hours worked per 29 C.F.R. § 785.15, *On duty*, or 29 C.F.R. § 785.17, *On-call time*, during certain weeks of Plaintiffs employment, the time Plaintiffs spent performing actual work, i.e., a Schedule Job or On-Shift or Off-Shift Emergency Calls, would exceed forty (40) hours during a seven (7) day period.

62. One of these weeks where Plaintiff Roy Martin's actual work alone breached the overtime threshold occurred during Defendants' February 2, 2017 pay period. Specifically, during this two-week period Plaintiff Roy Martin worked fifty-two-and-a-half (52.5) hours of actual work one week and sixty-four (64) hours of actual work another week. (See Exhibit E – Defendants' Feb. 2, 2017 Commission Report).

63. In addition to failing to pay proper overtime wages, Defendants also had a policy whereby they would make certain impermissible deductions from Plaintiffs' pay for business expenses and operating costs. Specifically, Defendants had a policy whereby they would deduct from Plaintiffs' pay flat fees for "renting" the vans and uniforms supplied by Defendants. Additionally, the Defendants required Plaintiffs to reimburse them for all the tools and parts that Plaintiffs had to purchase to complete their daily tasks. (See Exhibit E).

64. The FLSA requires that all wages be paid "free and clear" and forbids "kicks-back" when they are for the benefit or convenience of the employer. Specifically, the FLSA forbids "kick-backs" to the employer for reimbursements for tools and materials necessary to complete the job and uniform and vehicle rental fees when the employer requires the employee to wear said uniform and drive said vehicle. 29 C.F.R. § 531.35; 29 C.F.R. § 531.32.

65. Defendants' referral to Plaintiffs as "Renters" in their employment agreement, parts of which are attached hereto as Exhibit C, and their policy whereby Plaintiffs were charged "rental fees" for their use of the company vehicles and uniforms was merely an attempt by Defendants to make Plaintiffs appear as independent contractors rather than employees.

66. Defendants' actions were not in good faith or based upon a reasonable belief that they were not violating applicable laws.

67. Aside from failing to pay Plaintiff Roy Martin all incurred overtime wages pursuant to the FLSA, Defendants also failed to pay him all the wages he incurred during his final weeks of employment.

68. Upon hiring, Plaintiff Martin and Defendant Sparco had a clear and mutual understanding that he would be paid an hourly rate for all the work he completed.

69. On or about August 8, 2017, Plaintiff Martin was terminated from his employment with Defendants. Plaintiff Martin was not paid for the work he completed during his last pay cycle with Defendants. In addition to the Collective/Class actions claims, Plaintiff Martin brings an individual claim under the SCPWA for Defendants' failure to pay his last paycheck.

70. Upon information and belief, Defendant Sparco withheld Plaintiff Martin's last paycheck because this Defendant believes Plaintiff took certain tools belonging to Defendant Sparco. (See Exhibit F – Email to Plaintiff from Defendant Sparco).

13

71. Defendant Sparco's withholding of Plaintiff Martin's last paycheck over a dispute concerning missing tools is impermissible under the SCPWA. See, S.C. Code Ann. § 41-10-30(A) ("any changes [to] the terms [of wages] must be made in writing at least seven calendar days before they become effective.").

## FIRST CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS
### (29 U.S.C. § 206 et al)
### (Collective Class)

72. Plaintiffs, on behalf of themselves and the Collective Class, re-allege and incorporate by reference the paragraphs above as if they were set forth herein.

73. At all relevant times, Defendants have had gross revenues in excess of $500,000.00.

74. At all relevant times, Defendants have been, and continue to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

75. At all relevant times, Defendants have employed, and/or continue to employ, each of the Collective Class members within the meaning of FLSA.

76. The time spent by Plaintiffs and the Collective Class waiting to be dispatched to On-Shift or Off-Shift Emergency Calls was compensable time under 29 C.F.R. § 785.17, *On-Call Time*. Despite such, Plaintiffs were not compensated at a rate equal to $7.25 per hour for this time.

77. Defendants violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq*. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

78. Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective Class, are entitled to recover from the Defendants compensation for unpaid wages, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b).

14

## SECOND CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT OVERTIME WAGE VIOLATIONS
### (29 U.S.C. § 207 et al)
### (Collective Class)

79. Plaintiffs, on behalf of themselves and the Collective Class, re-allege and incorporate by reference the paragraphs above as if they were set forth herein.

80. At all relevant times, Defendants have had gross revenues in excess of $500,000.00.

81. At all relevant times, Defendants have been, and continue to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

82. At all relevant times, Defendants have employed, and/or continue to employ each of the Collective Class members within the meaning of FLSA.

83. At all relevant times in the period encompassed by this Complaint, Defendants had and maintain a willful policy and practice of refusing to pay overtime compensation for all hours worked in excess of forty (40) hours per workweek.

84. Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

85. Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective Class, are entitled to recover from the Defendants compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b).

### THIRD CLAIM FOR RELIEF
### SOUTH CAROLINA PAYMENT OF WAGES ACT
**(S.C. Code Ann. §§ 41-10-10 to 110)**
**(SC Class)**

86. Plaintiffs, on behalf of themselves and the members of the SC Class, re-allege and incorporate by reference the paragraphs above as if they were set forth again herein.

87. At all relevant times, Defendants have employed, and/or continue to employ, Plaintiffs and each of the SC Class Members within the meaning of the SCPWA. Plaintiffs and the SC Class members are "employees" and are not free from the control and direction of Defendants.

88. Plaintiffs and the SC Class worked for Defendants with the clear understanding and agreement by Defendants that their compensation would be consistent with all applicable laws, including federal and state wage and hour laws.

89. Pursuant to the SCPWA, "[a]n employer shall not withhold or divert any portion of the employee's wages unless the employer is required or permitted to do so by state or federal law. . . ." S.C. Code Ann. § 41-10-40(C).

90. As explained above, Defendants' policy of deducting from Plaintiffs and the SC Class members pay for necessary tools and materials and vehicle and uniform rental fees is not permissible under the FLSA.

91. The monies sought by Plaintiffs and the SC Class members under this claim, i.e., the actual reimbursement costs and rental fees is uncollectible under the FLSA; therefore, the federal FLSA does not preempt this state law claim.

92. Accordingly, Plaintiffs and the members of the SC Class are entitled to receive all compensation due and owing to them.

93. As a result of Defendants' unlawful policies and practices as set forth above Plaintiffs and the members of the SC Class have been deprived of compensation due and owing which Defendants promised to pay in their commitment to abide by applicable wage and hour laws and in violation of the PWA's mandate that no wages be withheld or diverted unless required or permitted under applicable law.

94. As a direct and proximate result of Defendants' conduct, Plaintiffs and the SC Class have suffered substantial losses and have been deprived of compensation to which they are entitled, including monetary damages in the amount of three (3) times the unpaid wages as well as costs and reasonable attorney's fees.

### FOURTH CLAIM FOR RELIEF
### PLAINTIFF MARTIN'S INDIVIDUAL CLAIM FOR RELIEF SOUTH CAROLINA PAYMENT OF WAGES ACT
### (S.C. Code Ann. §§ 41-10-10 to 110.)
*On Behalf of Individual Plaintiff Roy Martin*

95. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

96. At all relevant times, Defendants employed Plaintiff Roy Martin within the meaning of the SCPWA.

97. Pursuant to the SCPWA, "[w]hen an employer separates an employee from the payroll for any reason, the employer shall pay all wages due to the employee within forty-eight hours of the time of separation or the next regular payday which may not exceed thirty days." S.C. Code Ann. § 41-10-50.

98. Defendants have withheld Plaintiff Roy Martin's last paycheck without providing advance notice of such amounts and absent any lawfully sufficient reason for such conduct.

99. As a direct and proximate result of Defendants' conduct, Plaintiff Roy Martin has suffered substantial losses and has been deprived of compensation to which he is entitled, including monetary damages in the amount of three (3) times the unpaid wages as well as costs and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, individually and on behalf of themselves and all other similarly situated members of the Collective Class and members of the SC Class, pray that the Court grant the following relief:

A. Designation of this action as a collective action on behalf of the Collective Class, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), apprising class members of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

B. Designation of the action as a class action under Fed. R. Civ. P. 23 on behalf of the SC Class;

C. Appointment of the undersigned as Class Counsel;

D. Find that Defendants' FLSA violations were willful;

E. A declaratory judgment that the Defendants misclassified their employees as independent contractors instead of employees and therefore committed practices that are unlawful under the FLSA and the SCPWA;

F. An injunction against Defendants and their officers, agents, successors, employees, representative and any and all persons acting in concert with it, as provided by law,

from engaging in each of the unlawful practices, policies and patterns set forth herein in the future;

G. For *disgorgement* of revenues, profits and money unjustly earned from the unlawful practices;

H. An award of unpaid minimum wages to Plaintiffs and the members of the Classes;

I. An award of unpaid overtime wages to Plaintiffs and the members of the Classes;

J. Restitution of wages and monies improperly retained by Defendants;

K. An award of liquidated damages to Plaintiffs and members of the Classes;

L. An award of treble damages to Plaintiffs and members of the Classes to the extent permitted by S.C. Code Ann. § 41-10-80(C);

M. An award of all owed wages to Plaintiff Roy Martin on his individual SCPWA claim as well as an award of treble damages to the extent permitted by S.C. Code Ann. § 41-10-80(C);

N. An award of costs and expenses of this action together with reasonable attorneys' fees; and

O. Such other and further relief as this Court deems just and proper.

Respectfully Submitted,

S/ John G. Reckenbeil
John G. Reckenbeil, Fed I.D. No. 7671
Lawrence E. McNair, III, Fed I.D. No. 11723
LAW OFFICE OF JOHN RECKENBEIL, LLC
215 Magnolia Street (29306)
Post Office Box 1633
Spartanburg, South Carolina 29304
Phone: (864) 582-5472
Fax: (864) 582-7280

Dated: April 4, 2018
Spartanburg, South Carolina